# SUPREME COURT.

## In the Matter of The North American Life Insurance Company of New York.

*Life insurance company — appointment of receivers — duty of actuary — compensation of actuary.*

The duties of an actuary appointed by a receiver of an insurance company pursuant to the provisons of the act (*Laws of* 1869, *chap.* 902), relate only to those specified in section 8 of the act, and terminates with his report, unless such duties are continued by the court, and the compensation which is to be paid must be fixed by the court, and is not under the control of the receiver, superintendent of insurance, or actuary.

*Albany Special Term, June,* 1878.

Motion by Emerson W. Keyes, the actuary appointed by the receiver, in regard to his compensation and his discharge.

*Mr. Keyes,* in person.

*R. W. Peckham,* for the receiver.

Westbrook, *J.* — Mr. Henry R. Pierson under the provisions of chapter 902, of the Laws of 1869, was appointed receiver of The North American Life Insurance Company. On the 28th day of March, 1877, such receiver, by and with the approval of the superintendent of the insurance department, in conformity with section 8, of said act, appointed Emerson W. Keyes, the petitioner and applicant, actuary. On the 3d day of October, 1877, the actuary made a report to

the court as required by said section and act. The special term has instructed the receiver to act in conformity with the conclusions of the report, from which order an appeal has been taken to the general term, which appeal is still pending. The petitioner claims that such report was a mere preliminary one, and since its presentation he has been engaged in a further examination of the affairs of the corporation and intends to present another and further report which he supposes his duty requires him to do. The compensation of the actuary was originally fixed at $5,000 per year by the receiver with the concurrence of the superintendent of insurance. On the 1st day of February, 1878, the compensation of the actuary was reduced to $2,000 per year and continued at that ·sum through the months of February, March and April last, and on the twenty-fourth day of said month of April, the actuary was prevented by the receiver from further prosecuting his duties. The actuary insists that the receiver could not lower his compensation nor discharge him, and now applies to the court for relief.

The proper disposition of this motion depends upon the duties of the actuary under the statute aforesaid. What are these duties? The language of section 8 cannot be misunderstood, and its requirements are best expressed in its own words. He "shall make a careful investigation, according to the standard fixed by the laws of this state, into the condition of said company, and report thereon, in writing, under oath, to said court and receiver." The section then prescribes the action to be taken upon such report. If the report shows that the assets of the company can meet its obligations as they mature, "and if said actuary's report shall be confirmed by the court," the receiver shall carry on the company's business as the section directs. If, however, the report of the actuary is against the ability of the assets to meet obligations, the section is silent as to any approval of the court or any action by it, and it is then declared "the said receiver shall notify the said superintendent thereof, and the superin-

tendent shall, with the consent and advice of the treasurer of the state and in such manner as the said receiver, superintendent and treasurer, or a majority of them, shall determine, sell and convert said securities into money," and then the receiver shall, with the moneys thus obtained, proceed to discharge and pay the obligations of the company as the section directs. No other section or provision of the act (*chapter* 902, *Laws of* 1869) under which Mr. Keyes was appointed, prescribes for him any other duties. Section 10, of such statute, provides, in case the business of the company is continued by the receiver, for an annual examination of its affairs "by a competent actuary appointed by the superintendent of the insurance department," and section 13 declares : "The receiver may employ such clerks and actuaries as he may deem necessary for the proper conducting of his business as such receiver." From the fact, then, that section 8 defines what the actuary appointed thereunder shall do, and no provision being elsewhere made for the doing of any thing more or further by him ; from the fact that section 10 provides for the annual appointment of an actuary, also, for a specified purpose ; and lastly, because section 13 provides for the appointment, by the receiver, of "such clerks and actuaries as he may deem necessary for the proper conducting of his business as such receiver," my conclusion is, that the duties of Mr. Keyes were limited and confined to those prescribed by that section.

The next question which the motion presents is, when did Mr. Keyes' duties cease ? The section provides only for a single report "to said court and receiver." This is evident, for the section so expressly declares : "If it shall," is the language, "by *said report,* be found," &c., referring to the provision in the same sentence which requires the actuary to "*report*" on "the condition of said company * * * in writing, under oath, *to said court and receiver*, and hence there can be no foundation for a construction requiring a separate report to each. With the making of the report, the

right of the actuary at will to continue the work ends. It is possible that the report made may be incomplete or may require correction. The right to a supplemental or amended report is doubtless involved by necessary implication, for, when made, it would be deemed a part of the report required, and a condition of things can be readily imagined when such supplemental or amended report should be ordered. Who, however, is to determine that need? Not the actuary, for if employment and occupation depend upon his will, it may never cease. Not the receiver, for possibly his interests may require the truth to be suppressed. The statute is silent and any limitations upon the work of the actuary after the presentation of his report, or a continuation of his labor for the purpose of a supplemental or amended report must depend, it seems to me, upon the order or direction of the court. This conclusion is reached because the right to limit or continue the work of the actuary must reside somewhere, and in the absence of any statute regulation it must rest with the power to which is committed the duty of administration upon the assets of the corporation, which power is the court. Without an order, then, from the court, it is held that the duty of the actuary ended with his report, and if the same was to be continued permission so to do should have been obtained.

It is argued, however, that supplemental reports have been received, and by his petition the actuary informs the court, that in, his judgment, an additional or supplemental report is, in this instance, required. When referees have made supplemental reports, they have, in some instances, been accepted by the court, and such reception is an adoption of the act, and equivalent to an original order to do it; and it is possible that if the court have received one from the actuary, it might have been recognized as proper and legitimate. In the absence, however, of any order or permission to continue work, and without a direct application for that purpose, which will directly present its need, the court cannot and

ought not to say, that the work of the actuary should continue.

The application also presents this question, who must fix the compensation of the actuary? Upon this point the statute is also silent, section 13, to which allusion has already been made, and which permits the receiver "to employ such clerks and actuaries as he may deem necessary for the proper conducting of his business as such receiver," of which number we have already held that the actuary to be appointed under section 8 is not one, only provides that "the *said* clerks and actuaries," that is to say those appointed under section 13 "shall be paid such reasonable compensation as he may determine, subject, however, to the approval of the superintendent of the insurance department." There is, so far as we have discovered, no provision as to the mode or amount of compensation to an actuary who holds an appointment similar to that of Mr. Keyes. Certainly his services ought not to be gratuitous, and as his duties are independent of the receiver, and judicial in their character, the receiver should not fix his compensation, and thus measurably control his action. Neither has the superintendent of insurance any power in the premises, for none is conferred by law, and he has no duties to discharge in connection with the winding up of the company, which would confer upon him by necessary implication any such power. We are, therefore, again compelled to answer, that the absence of any statutory direction, the proper independence of the actuary, and the general powers and duties of the courts in the premises, make it, and it only, competent to fix the compensation.

Our views, then, to summarize them, are : The actuary's duties relate only to those specified in section 8 of the act we have considered, and terminate with his report unless such duties were or are continued by order of the court, and the compensation which is to be paid must be fixed by the court, and is not under the control of the receiver, superintendent of insurance or actuary. As the motion now made was not

Matter of North American Life Insurance Company.

so framed as to ask leave of the court to make a supplemental report, or so as to present, sharply, the need thereof, or the value of the services rendered, and as the views herein expressed differ somewhat from those of the actuary, and of the receiver, the present application will be denied, without costs, and without prejudice to the right of Mr. Keyes to ask the court for leave to continue in his labor, and to fix the amount of compensation for past or future services.